STATE, and CITY OF WINSTON, v. A. SAVERY.

(Decided May 1, 1900.)

*Vaccination Ordinance—Plea and Verdict of Not Guilty—*
*Appeal by the State.*

1. In a criminal prosecution, where there is a plea and general verdict of not guilty, the State has no right of appeal; such verdict ends the case.

2. The Code, sec. 1237, *restricts* the right of appeal on the part of the State to four instances, and *allows no other:* Where judgment has been given for the defendant: (1) Upon a special verdict; (2) upon a demurrer; (3) upon a motion to quash; (4) upon arrest of judgment.

CRIMINAL ACTION for violation of special city ordinance of Winston in refusing to be vaccinated, heard on appeal from the Mayor's Court, by *Robinson, J.,* and a jury upon the plea of not guilty. Upon the trial the prosecutor testified the warrant had not been sworn to—thereupon the defendant claimed a verdict of not guilty—which was allowed, and the State appealed.

DOUGLAS, J., writes the opinion of the Court.

MONTGOMERY, J., writes dissenting opinion, concurred in by CLARK, J.

*Messrs. Glenn & Manly,* with the *Attorney-General,* for appellant.

*Messrs. Jones & Patterson,* for appellee.

DOUGLAS, J. This is a criminal action brought here on the appeal of the State from a judgment discharging the defendant after a general verdict of not guilty. The material

facts are as follows: "The cause came on to be heard before the Superior Court on a warrant issued by the Mayor of the city of Winston against the defendant. There was no defect appearing on the face of the warrant, though no affidavit was attached.

The defendant pleaded not guilty, and the jury was empanelled.

The State introduced a witness, who swore that the warrant was issued without any affidavit, he being the witness referred to in the warrant as having made the affidavit.

Upon it appearing that no affidavit was made, defendant contended he was entitled to a verdict of not guilty.

The State first contended that the warrant being regular, that the absence of an affidavit made no difference, and that the most the Court could do, in case it refused to hear the cause, was to withdraw a juror and dismiss the warrant. The Court, in exercise of its discretion, refused to withdraw a juror or dismiss the action, and directed the Clerk to enter a verdict of not guilty, which was done, and the defendant discharged.

Upon this state of fact, the State and the city of Winston moved the Court to strike out the verdict of not guilty, as the defendant had never been in jeopardy, and to reinstate the case for trial, or, at most, to treat the entry of not guilty as a dismissal of the action, to the end that the State might proceed as it thought best.

The Court denies the motion, and the State and the city of Winston appeal.

No motion was made to quash—on the contrary the defendant pleaded to the indictment. The State insisted that the most the Court could do was to withdraw a juror. It does not appear that the State made any such motion; but on the contrary it does appear that the State insisted that the case

should be heard on its merits.   No one asked that the indict-
ment be quashed, and no one moved that a juror be with-
drawn.   The Court below announced that "in the exercise
of its discretion, it *refused* to withdraw a juror or dismiss the
action, but directed the clerk to enter a verdict of not guilty,
which was done, and the defendant discharged." We are
thus brought face to face with a *general verdict* of *not guilty,*
which we are asked to set aside on the appeal of the State.
Look at it as we may, there it stands, and we can proceed
no further unless we set it aside.   We may *reverse* as many
supposed judgments as we please quashing the indictment,
but that of itself will not do away with the *verdict.*   We can
not *reverse* the verdict, and hence if we entertain the appeal
we are forced to establish for the first time in this State the
dangerous precedent of granting the State a *new trial* in a
criminal action.   We may borrow the words of an eminent
lawyer, and say that in our opinion such action would be
"not simply error, but a misarrangement of the whole idea
of jurisprudence."

Where is there any element of quashing?   His Honor did
not quash and did not intend to quash the indictment.   We
do not understand the State as maintaining that that would
have been the proper action.   At best it seems to us to say
that his Honor should have permitted the case to proceed;
but that if he was determined to end it erroneously, he should
have committed the error of quashing the bill, because then
we could have reversed him on appeal.   It is true his Honor
may have committed error, but would that justify us in
exercising a *quasi* equitable jurisdiction in criminal matters?

But it is urged that unless we adopt some such construc-
tion the defendant may go unwhipt of justice.   How does
that concern us at present?   What right have we to find him
guilty, or to assume his guilt, for the purpose of invoking a

strained construction upon a pure question of law? We are well answered in the case of Spier, 12 N. C., 491, 493, where this Court says: "In this case, the guilt or innocence of the prisoner is as little the subject of inquiry as the merits of any case can be, when it is brought before this Court on a collateral question of law. Although the prisoner, if unfortunately guilty, may escape punishment, in consequence of the decision this day made in his favor, yet it should be remembered that the same decision may be a bulwark of safety to those who, more innocent, may become the subjects of persecution, and whose conviction if not procured on one trial, might be secured on a second or third, whether they were guilty or not." The opinion of the Court delivered by Judge HALL, and the concurring opinion of Chief Justice TAYLOR, are both exceedingly interesting and instructive. It should be noted that this case does *not* decide that the doctrine "once in jeopardy" applies *only* to capital felonies, although that may be inferred from its reasoning if the phrase is taken in its strictest sense. But there is certainly not the slightest intimation that a general verdict of not guilty can ever be set aside, and that is the question now before us. That opinion quotes Lord Coke as saying that "the life of a man shall not be twice put in jeopardy upon the same charge, for a capital offense;" but it also quotes Lord Coke as laying down the rule in still broader terms, and so as to render the discharge of the jury in *treason, felony* or *larceny,* illegal, even with the consent of the prisoner. (3 Inst., 110.) We do not understand the distinction between felony and larceny, but so great a Judge must have had something in his mind.

The doctrine of "once in jeopardy" goes far beyond that of former acquittal, and applies where the jury have never rendered any verdict. Thus it is held that where a jury has once been empanelled in a capital case, they can not be dis-

STATE *v.* SAVERY.

·charged before verdict except for causes beyond human control. A conscientious inability to agree after every reasonable effort, is now deemed a cause beyond control even in capital cases; but it should clearly appear that there is no reasonable possibility of agreement.

Let us briefly review the history of appeals by the State as shown in our reports. The cases of McLelland, 1 N. C., 569 (star p. 523), in the Superior Court, and Hadcock, 3 N. C., 348 (star p. 162), decided by the old Court of Conference, recognize the right of the State to appeal from the County Court to the Superior Court on a verdict of acquittal, the Court, however, in the latter case doubting the principle. In fact the opinion distinctly says that if it were *res integer,* their opinion would be to the contrary. These cases were overruled by *State v. Jones,* 5 N. C., 257, and we can find no subsequent case in our Reports where the State has ever claimed the right of appeal from a general verdict of acquittal. In the last-named case the head-note says: "The State is not entitled to an appeal in a criminal prosecution," while the case is briefly disposed of by a *per curiam* opinion as follows: "The State in a criminal prosecution is *not* entitled to an appeal under any of the provisions of the Act of Assembly regulating appeals; this appeal must therefore be dismissed." In *State v. Taylor,* 8 N. C., 462, this Court says: "It would be to no purpose for this Court to decide whether the paper-writings offered in evidence were properly rejected by the Circuit Judge or not; for upon the supposition that they were not, we could not grant a new trial after the acquittal of the defendant." This case, so clearly enunciating the principle and so repeatedly affirmed, has apparently never been questioned. In *State v. Martin,* 10 N. C., 381, the entire case is as follows: "The defendant was indicted below for an assault and battery, and being acquitted was

discharged; whereupon the State appealed. On the reading of the record in this Court, Mr. Attorney-General *gave up the cause* on the authority of *State v. Taylor* (1 Hawks, 462)." This example appears to have been faithfully followed for forty-eight years, as the State does not appear even to have attempted an appeal until 1869 in Credle's case, 63 N. C., 506. Taylor's case was promptly and emphatically reaffirmed; whereupon the State again subsided. In 1872 the State again tried it, but with no better result. *State v. Phillips,* 66 N. C., 646; *State v. Freeman, Ibid,* 647; *State v. West,* 71 N. C., 263; *State v. Armstrong,* 72 N. C., 193; *State v. Lane,* 78 N. C., 547; *State v. Swepson,* 82 N. C., 541; *State v. Moore,* 84 N. C., 724; *State v. Tyler,* 85 N. C., 569, 572; *State v. Powell,* 86 N. C., 640; *State v. Railroad,* 89 N. C., 584; *State v. Oswalt,* 118 N. C., 1208; *State v. Ballard,* 122 N. C., 1024; *State v. Hinson,* 123 N. C., 755; *State v. Davidson,* 124 N. C., 839; *State v. So. Ry. Co.,* 2 cases at this term. In this case the Court says:

"The case at bar comes within none of these classes (those mentioned in sec. 1237, of The Code). * * * Hence we must dismiss the appeal. This action on our part is not an affirmation in any degree, express or implied, of the judgment of the Court below. As we can not entertain the appeal, the principles therein decided are not before us, and therefore we are powerless to correct any error in the judgment, if error there be, no matter how serious or patent it may appear to us."

In the celebrated case of *State v. Swepson,* 79 N. C., 632, this Court, while stating in unequivocal terms that the verdict was obtained by fraud, declined to entertain the appeal of the State.

It is equally interesting to note the origin and growth of the right of the State to appeal under any circumstances.

This right even in its most limited form is purely the offspring of judicial construction. · Apparently the first allusion to it in our reports since we have had a Supreme Court, is in *State v. Credle,* 63 N. C., 506, where this Court, dismissing the appeal of the State on a verdict of not guilty (citing Taylor's case, *supra*), briefly says: "While the humanity of our law gives the right of appeal to the accused in all cases, the class of cases in which the State has that right, is very small." What they are is not stated. In *State v. Lane, supra,* this Court in dismissing the appeal, says: "Until lately no case could be found in the English Reports where a writ of error was allowed on behalf of the Crown in a criminal prosecution, and it has not yet been decided that such a writ may lawfully issue, as, in the cases in which it did issue, the question was not made. No reference is found to it in the older books on criminal law. * * * It will be seen that in many of the States it is held that the State has no appeal in a criminal case under *any* circumstances. In all, or nearly all, it seems to be held that where the right of appeal exists, it is given by statute; and that, if it exists at all independently of a statute, it is confined to two cases only—one where the inferior court has given judgment for the defendant upon a special verdict, and the other where it has given a like judgment upon a demurrer to an indictment or upon a motion to quash, which is considered as substantially similar. In this State it has been recognized as existing in *those two cases,* but I am not aware that it has been in any others."

In *State v. Moore,* 84 N. C., 724, this Court says: "The State has no right to appeal in a case like this. Its right of appeal in a criminal action is not derived from the common law or any statute of this State, but has obtained under the sanction of the courts by a long practice, and has been recog-

nized in but four cases, to-wit: where judgment has been given for the defendant upon a special verdict; upon a demurrer; a motion to quash; and arrest of judgment."

By this time it became apparent that the courts, acting upon the *quo minus* and *ac etiam* principle, had enlarged their jurisdiction of State appeals to the verge of public safety, and hence sec. 1237, of The Code, was passed, not as an enabling but as a *restrictive* statute.   This section provides that "an appeal to the Supreme Court may be taken by the State in the following cases, *and no other:*   Where judgment has been given for the defendant (1) upon a special verdict, (2) upon a demurrer, (3) upon a motion to quash, (4) upon arrest of judgment."   The statute is emphatic and unequivocal, and yet are we not asked to add another case, that is, where in our opinion, a general verdict of not guilty is *equivalent* to quashing?   If we can do this in one case, why can we not do so in all cases where the erroneous instructions upon the trial appear to us *equivalent* to anyone of the above cases? Can we not thus reach every erroneous instruction upon a question of law?   In the recent cases of *The State v. South-ern Railway Co.,* the facts were practically undisputed; there was a verdict of guilty in the Criminal Court, and the judgment of the Superior Court was *equivalent* to sustaining a plea to the jurisdiction.   Were we wrong in refusing to entertain the State's appeal?   If this Court was right then, it seems to us we must dismiss the present appeal.

In conclusion, we can do not better than quote the concluding words of Justice ASHE in delivering the opinion of a unanimous Court in *State v. McGimsey,* 80 N. C., 377, 383, as follows:   "We think the ancient rule of the common law has been sufficiently relaxed by our predecessors, and we are unwilling to move a step further in the direction of discretion. * * * In coming to this conclusion, we are aware that

STATE *v.* SAVERY.

its effect may possibly be to turn loose a bad man upon society, but it is better in the administration of the law there should be an occasional instance of violence even to the sense of public justice, than that a principle should be established which, in times of civil commotion that may occur in the history of every country, would serve as an engine of oppression in the hands of corrupt time-servers and irresponsible Judges to crush the liberties of the citizen."

Under our view of the law the appeal must be dismissed.

Appeal dismissed.

MONTGOMERY, J., dissenting. The term "appeal" as it is understood to mean the removal of a cause for final judgment from an inferior to a superior court to be tried *de novo* upon its merits, is of civil law origin, and was unknown to the common law. A writ of error upon matter of law was the remedy in criminal as well as in civil at the common law, but the writ was not allowable to the prosecution in criminal cases. In modern practice appeals can not be had by the State in criminal cases except as provided by statute. The decisions in our Court upon this subject are interesting. In *State v. Jones,* 5 N. C., 257, it was held that in a criminal prosecution the State was not entitled to an appeal under any of the provisions of the Act of Assembly regulating appeals. In *State v. Caudle,* 63 N. C., 506, it is said "the class of cases in which the State has that right (appeal) is very small." In *State v. Lane,* 78 N. C., 547, it was held that the State could appeal upon a special verdict, upon a demurrer, and upon a motion to quash. In *State v. Moore,* 84 N. C., 724, it was said: "Its (the State) right of appeal in a criminal action is not derived from the common law or any statute of this State, but has obtained under the sanction of the courts by a long practice, and has been recognized in but four

cases, to-wit: Where judgment has been given for defendant upon a special verdict; upon a demurrer; a motion to quash, and arrest of judgment." After the decision in the last-mentioned case, sec. 1237, of The Code, was enacted, and embraces the four cases mentioned in that decision in which the State can appeal.

In the case before us the defendant was tried in the court of the Mayor of Winston, was convicted and fined, and appealed to the Superior Court. In that court the defendant was tried on the warrant which was issued by the Mayor, and upon which there was no apparent defect, though, in fact, no affidavit of a complainant was attached. A witness, the person upon whose alleged affidavit the warrant was issued, testified that it was issued without affidavit. The subsequent proceedings, material for the purposes of this appeal, were, in the language of the case on appeal, as follows:

It appearing that no affidavit was made, the defendant contended he was entitled to a verdict of not guilty.

The State contended that the warrant being regular on its face, the absence of an affidavit made no difference, and that the case should be heard on its merits, and that the most that the Court could do, in case it refused to hear the case, was to withdraw a juror and dismiss the warrant.

The Court announced that, in the exercise of its discretion, it refused to withdraw a juror or dismiss the action, but directed the Clerk to enter a verdict of not guilty, which was done, and the defendant discharged.

The case before us is here on the appeal of the State, and if the appeal can be sustained it must be on the ground that the course of his Honor in instructing the jury to return a verdict of not guilty was in legal effect the quashing of the bill of indictment (the Justice's warrant). I am of the opinion that the action of his Honor was equivalent to a quashing of the

indictment from which the State had the right to appeal.    I know it is said in *State v. Powell,* 86 N. C., 640, that: "When a party charged with an offense before a tribunal of competent jurisdiction has been tried and acquitted the result is final and conclusive, and no appeal is allowed the State to correct any error committed by the Court."    But I feel satisfied that in this case the verdict of the jury returned by direction of his Honor was not such an acquittal as is contemplated in *State v. Powell, supra.*    An acquittal, to be final and conclusive, as is contemplated in the last-mentioned case, must be had upon a trial upon the *merits* of the case.    The ruling of his Honor in this case was in legal effect exactly as if he had quashed the bill of indictment for defect in substance. The State was anxious to have the case proceeded with on its merits, and insisted on such a trial, but his Honor upon discovering that the warrant was issued without an affidavit stopped the trial, and because of that defect, the issuing of the warrant without affidavit, directed the jury to return a verdict of acquittal.    It is true that the third sub-division of sec. 1237, of The Code, is in the words "upon a motion to quash," and it is also true that in the regular course of procedure the motion to quash should be made before the defendant pleads to the indictment; but in point of legal effect his Honor, without a motion on the part of the defendant made before or after pleading, after the defendant had pleaded and the jury had been empanelled, quashed the indictment because the warrant was not issued on affidavit.    He did not enter a formal judgment that the indictment (warrant) be quashed, but what he did was in legal effect just as if he had done so. The defendant was not tried for the offense with which he was charged, the warrant itself being sufficient in substance and regular in form, but he was discharged by an order to the jury to acquit him of the charge because the warrant

was not issued on affidavit. The doctrine of "once in jeopardy" applied only to trials where the indictment is for a capital felony. Wharton's Crim. Law, p. 577; *State v. Spier,* 12 N. C., 491.

CLARK, J. I concur in the dissenting opinion.